


U.S. Department of Justice

*United States Attorney  
Eastern District of New York*

MEG:LKG/AS  
F#: 2015R01691

271 Cadman Plaza East  
Brooklyn, New York 11201

November 13, 2018

By Hand and ECF

The Honorable Carol Bagley Amon  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

The Honorable Steven L. Tiscione  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. John Scarpa, Jr.  
               Criminal Docket No. 18-123 (S-1) (CBA)

Dear Judges Amon and Tiscione:

      The government respectfully submits this letter requesting that the Court revoke defendant John Scarpa's bail, and enter a permanent order of detention. Scarpa is a criminal defense attorney who faces charges related to witness bribery, stemming from his conduct leading up to and during a double-homicide trial in New York state court. Scarpa wasted little time after his federal indictment to tamper with a witness. Representing a defendant accused of an assault in a domestic violence case, Scarpa participated in a three-way call with his incarcerated client and his client's victim. After encouraging his client to call from a different inmate's account—so that his call would go undetected—Scarpa instructed the victim on how she should refuse to answer questions at trial by invoking the Fifth Amendment. Scarpa's actions are not just unethical; they are criminal. He has violated the terms of his release by committing a state crime, and his bail should therefore be revoked.

I. <u>Background</u>

    A. <u>The Defendant's Indictment and Pretrial Release</u>

On September 24, 2018, Scarpa was indicted for violating the Travel Act, 18 U.S.C. § 1952(a), and conspiracy to do the same, 18 U.S.C. § 371, for participating in a scheme to bribe a witness. Scarpa's alleged conduct is summarized in the government's letter filed in support of a permanent order of detention ("Det. Memo."). <u>See</u> Docket Entry No. 80. In the letter, the government argued that Scarpa should only be released on a secured and significant bond.

In sum, Scarpa employed Charles Gallman in a pseudo-investigator and paralegal capacity. Gallman—a five-time convicted felon who has participated in at least two murders—has a history of bribing and intimidating witnesses. Scarpa worked with Gallman to get a convicted murderer, Luis Cherry, to testify in support of his co-defendant, Reginald Ross, Scarpa's client. At trial, Scarpa called Cherry as a witness and directed him through perjurious testimony that purported to exculpate Scarpa's client, who was nevertheless convicted of two execution-style murders. The government summarized the wiretap evidence against Scarpa in its prior submission. <u>See</u> Det. Memo., at 5-8. On November 8, 2018, Gallman pleaded guilty to this crime.

Scarpa was released at his arraignment, on September 25, 2018, with the government's consent. His $500,000 bond was secured by property. The bond prohibited Scarpa from, among other things, violating federal, state and local law while on release. <u>See</u> Docket Entry No. 87.

    B. <u>The Defendant's Criminal Activity While on Release</u>

Just two weeks after he was released on bail in this case, Scarpa engaged in witness tampering in a state proceeding in which he served as defense counsel. Based on information provided by the Queens County District Attorney's Office ("QCDA"), the government learned that Scarpa represented Warnell Wells in two domestic violence cases involving different victims—one a felony and the other a misdemeanor. The misdemeanor case was initiated after the victim's daughter called 911 to report Wells' assault of the victim (the "Victim") on June 19, 2016. The Victim told responding officers that Wells hit her in the face and threw a brick through her window. A few days later, Wells allegedly choked the Victim, and retaliated against her by posting sexual images and videos of her online.[1]

The case against Wells was scheduled to proceed to trial last month. The parties appeared on October 9 and 10, 2018 for pretrial conferences; jury selection was

---

[1] The Victim later recanted her allegation that Wells choked her and explained that she only reported the choking after the officers told her they could not charge Wells with additional crimes related to the sexually explicit revenge images Wells posted of the Victim. The Victim maintained that Wells assaulted her on June 19, 2016.

supposed to begin on October 15.  The Victim was represented by court-appointed counsel on an unrelated pending case.

On October 10, 2018, Wells violated an order of protection against him by calling the Victim from prison.[2]  Wells then directed the Victim to call Scarpa and to add him to the conversation.   During this call, Scarpa asked if Wells was calling from prison by using his own inmate pin.  Wells stated that he was, and asked if Scarpa needed him to call back.  Scarpa responded that he would "appreciate it."  Minutes later Wells called the Victim again, this time from another inmate's account, and again told her to include Scarpa.  When Scarpa picked up, he asked, "We good now?  Alright, so what she doing?"  Scarpa clarified that by "she," he meant the Victim.  Wells responded, "That's who is calling.  She is not cooperating with them."   At this point in the conversation, referencing previous conversations he has had with the Victim, Scarpa began advising her on how she should assert the Fifth Amendment when asked questions at trial against Wells:[3]

| | |
|---|---|
| Scarpa: | Ok that—is she on the line with us? |
| Wells: | Yeah. |
| Scarpa: | [The Victim]? |
| Victim: | Yes. |
| Scarpa: | Ok did you talk to that attorney like I told you to? |
| Victim: | I spoke with my attorney.  He told me that I don't have a choice but to go in and if there is any question they ask me I have to—I can plead the Fifth, but I have to go. |
| Scarpa: | Oh, that's absolutely right. |
| Victim: | Ok. |
| Scarpa: | That's absolutely right, you go. |
| Victim | Mhmm. |
| Scarpa: | Questions, you taking the Fifth. |

---

[2] There were in effect two orders of protection in place at the time forbidding Wells from having contact with the Victim: a final order of protection issued on October 30, 2017 that was in effect until October 29, 2018 related to two prior domestic violence cases in which Scarpa represented Wells, and one related to the pending domestic violence case, in which Scarpa also represented Wells.

[3] This transcript provided here is in draft form.  Audio recordings of both calls, in full, will be provided to chambers on discs.

| | |
|---|---|
| Victim: | Right. |
| Scarpa: | Ok? |
| Victim: | Ok. |
| Scarpa: | That's all you have to do. |
| Victim: | Ok. |
| Scarpa: | Ok, now, listen I got to explain it to you a little bit better than that. |
| Victim: | Ok. |
| Scarpa: | You have a right, you have a right to remain silent, if anything that you say could or would be used in a court of law against you that could expose you to a crime. So now, "what's your name," you can't take the Fifth to, right? |
| Victim: | Uh-huh. |
| Scarpa: | But, did—you know, "Were you involved in an incident with Warnell Wells?" "I take the Fifth." |
| Victim: | Uh-huh. |
| Scarpa: | You understand what I'm saying? You can take the Fifth to anything that has to do between you and Tootie [Wells]. |
| Victim: | Ok. |
| Scarpa: | Anything, anything at all that you know, "Was your boyfriend?" "I take the Fifth." |
| Victim: | Ok. |
| Scarpa: | You don't have to answer any of those questions because, you know, they are gonna try to claim that this was the person that you were claiming, you know, did something to you, and if you are saying now that is not true that it didn't happen then they are going to try to pin something on you. |

4

| | |
|---|---|
| Victim: | Right. |
| Scarpa: | So you have an absolute right to remain silent. Ok? |
| Victim: | Ok, yes. |
| Scarpa: | So, I don't—now—you didn't tell them that you were going to do that, did you? |
| Victim: | No, no, no, nah-uh. |
| Scarpa: | Of course, alright—so the fools—let, let them play the game out, ok? |
| Victim: | Ok. |
| Scarpa: | Alright. |

Wells' trial began five days later, on October 15, 2018. Scarpa demanded that the Victim stay in the courtroom during opening addresses. In his opening remarks, Scarpa commented that he would be cross-examining the Victim about the assault that occurred on June 19, 2016. Afterwards, Scarpa was seen speaking with the Victim in the courthouse. Following that conversation, the Victim approached the assigned Assistant District Attorneys (the "ADAs") and told them that she no longer remembered the June 19 assault. The next day, on October 16, 2018, the Victim told the ADAs that she now remembered the June 19 assault, and that she was actually the one who assaulted Wells. On October 17, 2018, the ADAs discovered the two jail calls quoted above and successfully petitioned the court to remove Scarpa from the case. The case was subsequently adjourned for motions related to the tampering of the Victim, which are due on November 20, 2018.

II.  Discussion

   A.  Applicable Law

Title 18, United States Code, Section 3148 governs revocation of bail. Pursuant to 18 U.S.C. § 3148(a), "[a] person who has been release[d] under [18 U.S.C. § 3142] and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). A proceeding for revocation of an order of release may be initiated by the government "by filing a motion with the district court." Id.[4]

---

[4] Section 3148(b) also provides that "[t]o the extent practicable . . . [the defendant] shall be brought before the judicial officer who ordered the release and whose order is alleged to have been violated." Because the Honorable Steven L. Tiscione ordered Scarpa's release (on the government's consent), this letter is addressed to him in addition to the assigned district court judge.

5

Section 3148(b) provides that a court "shall" revoke bail and detain a defendant if two conditions are met. *First*, the court finds either "probable cause to believe that the person has committed a Federal, State, or local crime while on release" or "clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3148(b)(1)(A), (B). *Second*, the court must determine that either the person is "unlikely to abide by any condition or combination of conditions of release," or there is no combination of conditions of release that would guarantee the defendant's appearance or the safety of the community. 18 U.S.C. § 3148(b)(2)(A), (B). See generally, United States v. Gotti, 794 F.2d 773, 776 (2d Cir. 1986).

Notably, "probable cause for purposes of § 3148(b)(1), does *not* mean "more likely true than false" that a defendant committed a crime; rather, "facts available" to the court must support "'a man of reasonable caution in the belief' that the defendant has committed a crime while on bail." Gotti, 794 F.2d at 777 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). See Brown, 460 U.S. at 742 (explaining that probable cause means a "practical, nontechnical probability" and there is no requirement that "such a belief be correct or more likely true than false"). Once probable cause is found that a defendant committed a crime, the defendant may be "detained upon a finding, by only a preponderance of the evidence, that no conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition." Id. Thus, Section 3142(f) notwithstanding, the "dangerousness" prong of revocation need not be proven by clear and convincing evidence. Id.

The Court retains discretion to hold an evidentiary hearing on the revocation, but may revoke a defendant's bail without such a hearing where the Court makes a probable cause finding on the record before it. See United States v. Galanis, 656 F. App'x 560, 562 (2d Cir. 2016) (summary order) (affirming the district court's revocation of bail without an evidentiary hearing, finding that the district judge "acted within his discretion in proceeding based on the government's proffer and his review [of the evidentiary record]"). A district court's decision to remand a defendant pursuant to Section 3148(b) is affirmed unless its findings were clearly erroneous or the Court committed an error of law. United States v. LaFontaine, 210 F.3d 125, 130 (2d Cir. 2000).

B. Analysis

There is probable cause to believe Scarpa committed two crimes under New York Penal Law: witness tampering and criminal contempt. The calls quoted above also demonstrate, by a preponderance of the evidence, that Scarpa cannot abide by any conditions of release.

1. Witness Tampering

New York state law provides, in relevant part, that a person is guilty of Witness Tampering in the Fourth Degree when, "knowing that a person is about to be called as a witness in an action or proceeding, he wrongfully induces or attempts to induce [the

6

witness] to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at, such action or proceeding." New York Penal Law § 215.10. Unlike other charges of witness tampering under New York law, § 215.10 does not require a defendant to have used threats against a victim; wrongfully inducing a witness to absent herself from a pending criminal proceeding is sufficient.

Here, Scarpa spoke to the prosecution's main witness, Scarpa's client's assault victim. He advised the Victim to assert the Fifth Amendment at trial when the prosecutors asked her questions about his client ("Were you involved in an incident with Warnell Wells?" "I take the Fifth."). He did so to effectively eliminate her testimony from trial, which was beneficial to Scarpa because it would help him and his client to prevail at trial. There is therefore, at least, probable cause that he tampered with a witness. Cf. United States v. Cioffi, 493 F.2d 1111, 1119 (2d Cir. 1974) (interpreting a federal obstruction-of-justice statute to include wrongfully influencing a witness to plead the Fifth Amendment)[5], accord United States v. Gotti, 459 F.3d 296, 343 (2d Cir. 2006) (affirming conviction under the federal statute where there was evidence of the defendant "suggesting" that a witness testifying against him plead the Fifth Amendment). See also United States v. Peterson, 385 F.3d 127, 142 (2d Cir. 2004) (observing that while mere advice does not constitute obstruction of justice, "self-serving advice," like advising a co-conspirator to remain silent, does).

2. Criminal Contempt

There is also probable cause to believe Scarpa committed Criminal Contempt in the Second Degree. New York Penal Law §§ 215.50(3) and (6) criminalize, respectively, "intentional disobedience or resistance to the lawful process or other mandate of court" and the "intentional failure to obey any mandate, process or notice" issued by a court. Under New York law, a person is criminally liable for conduct of another, if "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." New York Penal Law § 20.00. See also Drake v Andrews, 197 N.Y. 53, 56-57 (1909) (observing that a person who aids, procures or advises the disobedience of a lawful mandate of the court is equally guilty with him who actually disobeys it), accord McCormick v. Axelrod, 59 N.Y.2d 574, 584 (1983) ("It is clear that a party who assists another in a violation of judicial mandate can be equally as guilty of contempt as the primary contemnor.").

Wells had orders of protection prohibiting Wells from having any contact with the Victim, which Scarpa well knew because Scarpa had served as Wells' counsel in multiple cases where the orders were pronounced in court on the record. Yet after confirming that the Victim was on the line with Wells—in violation of the orders—Scarpa continued the conversation. Scarpa counseled the Victim on how she could plead the Fifth when she

---

[5] The Second Circuit was interpreting 18 U.S.C. § 1512(b), under which it is unlawful to knowingly "intimidat[e], threaten[], or corruptly persuade[] another person, with intent to . . . prevent the testimony of any person in an official proceeding."

testified at trial for the prosecution.  There is thus probable cause to believe that Scarpa assisted Wells to violate the orders of protection: Scarpa expanded the length and scope of the contact between Wells and the Victim to include a discussion about pleading the Fifth Amendment.  Cf. McCormick, 59 N.Y.2d at 584-85 (noting that although the party's participation in the crime "was only indirect," the assistance provided by the party compelled the conclusion that it was "equally as guilty of contempt as the primary contemnor").

### 3. A Preponderance of the Evidence Shows That Scarpa Is Unlikely to Comply With Conditions of Release

For years Scarpa has been on notice that he was under investigation by federal and state authorities.  The QCDA notified him in approximately July 2015 that he had been intercepted talking to Gallman, whose telephone had been wiretapped.  Gallman was indicted first by the QCDA for witness bribery, and then by a grand jury in this district.  In the detention letter following the original indictment of Gallman, the government described Gallman's activities with Scarpa, identifying Scarpa as "Attorney-B" and quoting some of his conversations with Gallman that exposed their criminal conduct.  See Docket Entry No. 23, at 8-9.

Then, on September 24, 2018, Scarpa was himself indicted along with Gallman on a superseding indictment in this case, and arraigned the following day.  In its detention memorandum, the government detailed Scarpa's participation in bribing Cherry.  See Docket Entry No. 80.  The government also highlighted Scarpa's other questionable conduct at trial, including eliciting the clearly perjurious testimony from Cherry, challenging the prosecutor to a fight and asking a witness her law school grade point average, even though the witness, it turned out, had not gone to law school.  See id.

The investigation, the federal indictment, and the terms of his release have done nothing to dissuade Scarpa from continuing to practice law by breaking the law.  Just two weeks removed from his federal arraignment, Scarpa picked up where he left off by attempting to improperly influence another witness, in another trial.  Recognizing that his conduct was unlawful, Scarpa attempted to avoid detection by asking that Wells (along with the Victim) call him from a different inmate's account—which itself, Scarpa knew, is against prison rules.  He then coached the Victim—a represented party and a witness for the prosecution—into how and when she should assert her right to remain silent under the Fifth Amendment, when asked questions that implicated Wells.

There is no reason to expect Scarpa to abide by conditions of release after he violated them in the most egregious way possible: by engaging in virtually the same conduct that led to his federal indictment.  Moreover, because Scarpa has demonstrated the extent to which he will go to avoid detection—even encouraging an inmate to break prison rules—the Court should put little faith in any promise that he will abide by more stringent conditions of release, like house arrest.  All Scarpa needs to commit his crimes of choice, witness tampering and bribery, is a telephone, which Scarpa could easily and secretly obtain.  See LaFontaine, 210 F.3d at 132-34 (affirming revocation of bail where defendant, a "white-

collar criminal with no connection to the mob," tried to influence the testimony of a witness without using violence or threats).[6]

III.    Conclusion

For the reasons above, the Court should revoke the defendant's bail.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Lindsay K. Gerdes
Andrey Spektor
Assistant U.S. Attorneys
(718) 254-6155/6475

cc:    Defense Counsel of record (by ECF)
       Clerk of the Court (CBA) (by ECF)
       Pretrial Services (by Email)

---

[6] Although Scarpa's bond should be revoked based on his inability to comply with conditions of release, he also poses a danger to the community. The jail calls quoted in this letter, together with Scarpa's conduct outlined in the government's prior submission, show, by a preponderance of the evidence, that Scarpa is willing to sabotage prosecutions, no matter how violent his clients may be, or how much danger they pose. As a result, every witness and victim involved in criminal cases in which Scarpa serves as counsel—and there are many—are at risk, so long as Scarpa has access to a phone. See United States v. Millan 4 F.3d 1038, 1048 (2d Cir. 1993) (noting that "dangerousness" under the Bail Reform Act does not refer only to the safety of individuals but to the "the danger that the defendant might engage in criminal activity to the detriment of the community"), id at 1049 (refusing to leave the safety of the community to the "word of [the defendant] that [he] will obey the conditions").