

# raiser&kenniff
## ATTORNEYS AT LAW

**Partners**
Steven M. Raiser
Thomas A. Kenniff
Bruce R. Connolly
Ethan D. Irwin
Anthony V. Falcone

**Associates**
E. Gordon Haesloop
Nipun Marwaha

300 Old Country Road, Suite 351
Mineola, New York 11501
Tel. 516-742-7600 • Fax 516-742-7618

**Of Counsel**
Edward Fregosi
John J. Rivas
Amy Sklar
Patricia A. Craig
Anthony J. Colleluori

April 18, 2019

**VIA ECF AND HAND DELIVERY**

Hon. Carol Bagley Amon
U.S. District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   *Re:* *USA v. Scarpa*
     *18 CR 123 (CBA)(RER)*

Dear Honorable Amon:

## I. Background

Following our pre-trial conference on April 11, 2019, we were asked to provide a letter motion in support of the calls we seek to have admitted in evidence. Below are those calls and the legal justification for them.

For purposes of avoiding repetition, we would like to point the court to the following theories of admissibility:

 1) Many of the statements we seek to admit are not hearsay and hence do not fall under the hearsay exclusion, i.e. the statements go to prove the *state of mind* of the declarant coconspirator, not to prove the truth of the matter asserted.[1]

---

[1] Fed. R. Evid. 801
Hearsay means a statement that:
(1) the declarant does not make while testifying at the current trial or hearing; and
(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

Manhattan Office
87 Walker Street
New York, New York 10013
212-274-0090

1
www.raiserandkenniff.com

Suffolk Office
80 Orville Drive, Suite 100
Bohemia, New York 11716
631-338-5711

2) Any statements deemed by this court to fall under the hearsay exclusion should nonetheless be received based upon <u>Fed. R. Evid. 806</u> (Attacking *and* Supporting the Declarant's Credibility). The unique nature of this case should be noted, in that the Government seeks to prove the majority of their case through recordings. Many of these recordings involve Gallman making statements that are said to implicate Mr. Scarpa. Therefore, the Government has placed the credibility of Gallman, as to those statements, at issue. As such, we should be permitted to enter additional recorded statements, or additional parts of recorded statements, which tend to undermine the alleged assertions and inferences the Government intends to argue.[2]

We are in short requesting fundamental fairness in the presentation of evidence. When the Government, with the permission of the court, enters a recording on a particular salient point (ex. intent to commit a bribery) they thereby "open the door" to refutation by similar evidence under the rule of completeness (<u>United States v. Corrigan</u>, 168 F.2d 641, 645 (2d Cir. 1948).

The Rule of Completeness does not apply merely to statements made within the same recorded conversation, but also applies to additional conversations about the same subject matter.

> If a party introduces *all* or part of a writing or *recorded statement*, an adverse party may require the introduction, at that time, of any other part--or *any other* writing or *recorded statement*--that *in fairness* ought to be considered at the same time (<u>Fed. R. Evid. 106</u>, emphasis added).

---

[2] <u>Fed. R. Evid. 806</u>
When a hearsay statement--or a statement described in Rule 801(d)(2)(C), (D), or (E)--has been admitted in evidence, the declarant's credibility may be attacked, and then supported, *by any evidence that would be admissible for those purposes if the declarant had testified as a witness.* The court may admit evidence of the declarant's *inconsistent statement or conduct, regardless of when it occurred* or whether the declarant had an opportunity to explain or deny it. If the party against whom the statement was admitted calls the declarant as a witness, the party may examine the declarant on the statement as if on cross-examination (emphasis added).
"In criminal prosecution, after the government presented a tape taken from a recording device worn by a confidential informant during the alleged assault, on which the alleged assault victims' voices could be heard, and the district court learned that the alleged assault victims would not be called to testify for either party because they would invoke their Fifth Amendment right against self-incrimination, evidence of alleged assault victim's statement, contained in FBI agent's report, admitting that he had faked a seizure during the course of the assault, was admissible under rule of evidence governing attacks on the credibility of a hearsay declarant, as a statement by the declarant that was inconsistent with the declarant's hearsay exclamations heard on the tape." (<u>U.S. v. Uvino</u>, E.D.N.Y.2008, 590 F.Supp.2d 372).
Defendant's prior inconsistent statement was admissible during testimony by defendant's son, even if it was fruit of an illegal search, in order to impeach declaration attributed to defendant by his son during testimony, and it was enough that hearsay statement afforded some indication that fact was different from son's testimony, and admissibility did not turn on whether prior statement directly contradicted declaration testified to by son; defendant did not take the stand, and defendant's son testified that in his conversation with defendant, defendant transferred possession of firearms to son, and prosecution sought to impeach statement attributed to defendant with defendant's prior statement that he had narcotic-like addiction to firearms and to use prior statement to undermine assertion that defendant intended to relinquish possession of firearms to son. (<u>U.S. v. Traska</u>, E.D.N.Y.1995, 962 F.Supp. 336).

Excluding our additional recorded statements, would in effect leave the jury with an incomplete understanding of all the evidence that is relevant on any given point. The court should allow a full presentation of the evidence, which will assist the jury in "determining the truth" (Fed. R. Evid. 611). The Court's function is "not merely that of an umpire, but to bring forth all relevant facts." (United States v. Ramos, 413 F.2d 743, 746 (1st Cir. 1969). When a jury is permitted to hear, for instance, a phone call where the Government asks them to draw an inference that the declarant's intention was to get a witness to lie, they should likewise be permitted to hear a phone call where the declarant specifically indicates that he told the witness *not* to lie. The jury should be given the opportunity to number one, decide if the inferences the Government asks them to draw are proper and number two, if the statements offered by the defense are reliable.

The Government is free to make its argument to the jury that every statement made by Mr. Scarpa and Gallman not supporting their case are, "self-serving," but the jury should not be shielded from that evidence. They should be allowed to make the ultimate determination for themselves. The jury can take into consideration that these statements were *not* made post-arrest, they were not made to law enforcement in the course of an investigation where a declarant would have both reason and opportunity to recite a self-serving and untruthful statement and there is no indication that they knew they were being recorded at the time the statements were made. In addition, some of these statements have their own *additional* indicia of reliability in that they were made very close to the time the events they refer to occurred and while under the stress of the event (especially when the declarant was being accused of wrongful or even illegal behavior):

(1) Present Sense Impression. A statement describing or explaining an event or condition, made while or *immediately after the declarant perceived it*.
(2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was *under the stress of excitement that it caused*.
(Fed. R. Evid. 803, emphasis added)

The jury should have a full view of both the inculpatory *and* exculpatory statements. The Government is utilizing hours of phone recordings (both regarding the alleged bribery [3] and many of which involve recordings of conversations having nothing directly to do with the bribery itself [4]) to prove Gallman and Mr. Scarpa intended to bribe Cherry to lie. The defense should not be handcuffed in *refuting* this assertion through the *very same mode of evidence*.[5]

---

[3] Calls 3 – 15, 39, 44 – 53, 56 – 57 & 63-66.
[4] The Scheme to Intimidate and Use False Testimony Against Melvin Anderson: Calls 16-38; The Scheme to Procure May Frances Ross's False Alibi Testimony: Call number 54; Evidence of the Defendant's Hesitation to Speak on the Telephone: Call numbers 55, 58, 2; Other Evidence of the Defendant and Gallman's Relationship: Call numbers 1, 40-42 and 59; Gallman's Criminal History: Calls 60-62.
[5] Fed. R. Evid. 806 and 106

## II.   Recordings Defense Seeks To Admit

    i.    Call Target No. 38684, beginning of call to 1:03 (<u>Exhibit A</u>, P.127–128, L.17-12)

    This call is *Gallman speaking* to Mr. Scarpa. *Gallman states* that he wants to see Cherry and remarks on Cherry's prior testimony stating, "…the truth is the truth..." and Mr. Scarpa answering, "yep…I mean, it was crazy, but okay, whatever…." (<u>Exhibit A</u>, P.128 at L.8-9). This call is clearly relevant since it is between Gallman and Mr. Scarpa, speaking about Cherry at the Ross trial. It is not hearsay, because it is not being offered to prove that Cherry told the truth.[6] The statement is being offered to show the state of mind of both Gallman and Mr. Scarpa, very close to the time these events unfolded in court.[7] Their statements, both in words and in tone, undermine the Government's assertion[8] that Gallman and Mr. Scarpa intended to bribe Cherry (as asserted by the Government citing numerous recordings[9]). Gallman and Mr. Scapa's *belief*[10] that Cherry told *the truth* during his testimony undermines the notion that they had the state of mind (both knowledge and intent) to bribe Cherry *to lie*.[11]

    ii.    The entirety of call 38385 (<u>Exhibit B</u>, P.114 (L.23) – P.122)

    The Government seeks to enter only a part of this call. We ask the court to *enter the complete call*. The complete call has Mr. Scarpa correcting Gallman to always tell the truth. This call is not being offered to prove Mr. Scarpa and Gallman "always tell the truth" (<u>Exhibit B</u>, P.118 at L. 20-23). It is being offered to demonstrate their intent in this particular case was not to get the witness to lie. It was occurring during the trial itself and while under the stress of the events, namely the accusations of Gallman bribing Cherry. As such there is an additional indicia of reliability.[12] The Government seeks to use *part* of the call that they believe proves the guilty mind of both Gallman and Mr. Scarpa. Yet they simultaneously seek to preclude, *in the same conversation,* statements of Mr. Scarpa that tend to undermine that alleged state of mind. That is an inconsistent position to take and cannot be sustained in light of the doctrine of completeness.[13] The central theme in the Government's case is built through recordings and parts of recordings that suggest that Mr. Scarpa and Gallman were attempting to manufacture testimony through bribery and other means, as opposed to relying on witnesses to convey what they believed to be true. The recordings the Defense seeks to admit are being offered to give a full understanding to the jury as to the actual state of mind of Mr. Scarpa.

---

[6] <u>Fed. R. Evid. 801</u>
[7] <u>Fed. R. Evid. 803</u>
[8] <u>Fed. R. Evid. 106</u>
[9] Government calls, 3-15; 39; 44-53; 56-57 and 63-66
[10] This is not an expression of belief *to prove the fact believed* (Fed. R. Evid. 803, emphasis added).
[11] <u>Fed. R. Evid. 806</u>
[12] <u>Fed. R. Evid. 803</u>
[13] <u>Fed. R. Evid. 106</u>
"If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time."

iii.        Call 24554 from: :20 - :54 (Exhibit C, P.13 at L.6-21)

This call has Gallman speaking to Scott (Brettschneider). Gallman does all the talking and his statement is solely about Cherry and therefore relevant. This is likewise not hearsay, because it is being offered to show the state of mind of Gallman. It shows that before visiting Cherry he was wondering why he was no longer agreeing to help the Government ("…first he agreed to testify for the DA; now he refused to. So I wanted to know why…" (Exhibit C, P.13, L.10-11). This undermines the Government's assertions through other recorded statements of Gallman that he intended to bribe Cherry. The fact that he was wondering why Cherry decided not to cooperate with the Government challenges the Government's evidence, or at least their interpretation of the evidence, that suggests he provided the incentive for Cherry to no longer cooperate with them. Intent being an issue in this case, the defense should be allowed to offer additional calls that undermine that intent (Fed. R. Evid. 806 & 106). Furthermore, the statement, "the kid said look, tell his lawyer if he wants to use me, just call me, man" (P.13, L. 20-21) shows that Cherry was the one approaching Mr. Scarpa, which undermines Mr. Scarpa's purported intent to engage in a bribery as well. This recording is also consistent with the letters Cherry sent to Judge Hudson indicating his intent to support Ross, pre-dating Mr. Scarpa's representation of Ross. This recording also tends to prove Gallman's *lack of knowledge* (another major issue in the case) as to why Cherry decided to support Ross and therefore, undermines the assertion that he bribed Cherry in order to get him to change his testimony in favor of Ross.[14] It undermines the evidence the Government seeks to admit, which according to them tends to show that Gallman provided the incentive for Cherry to testify favorably to Ross.[15] These statements have an additional indicia of reliability in that they were made very close to the time of the events that occurred ("Just leaving downstate…I had to go see this guy. It's that double homicide Scarpa working on." Exhibit C, P.13, L.3-7).[16]

iv.        Call 38395 from: :12 - :43 (Exhibit D, at P.122 at L.11-22)

This call involves Gallman speaking to another individual. Gallman states that "the DA bring my name up in the trial today, isn't it true that TA…told you he would put money in your commissary…if you testify his way? Hell motherfucking no…" (Exhibit D, P.122, L.15-19). This call is relevant, because he is speaking about Cherry's testimony at the Ross trial. This call is not being offered for the truth of the matter asserted. It is being offered to show Gallman's state of mind. These statements have an additional indicia of reliability in that they were made very close to the time the events that occurred [17] and both in word and tone, refute the notion that Gallman *intended* to bribe Cherry by offering him a "list of things" in exchange for his agreement to testify falsely in support of Ross. The Government opened the door on this issue whether directly or indirectly through numerous recordings.[18] The Defense should be allowed to rebut it through the same mode of evidence (Fed. R. Evid. 806 & 106).

---

[14] Fed. R. Evid. 806 and 106
[15] Government calls, 3-15; 39; 44-53; 56-57 and 63-66
[16] Fed. R. Evid. 803
[17] Fed. R. Evid. 803
[18] Government calls, 3-15; 39; 44-53; 56-57 and 63-66

v.        Call 40422 from: 1:55 to 2:12 (Exhibit E, P.134-135 at L.15-4)

This call refutes and puts into context the allegation of the Government (through both the transcript of the witness' testimony and call offered by the Government) that Mr. Scarpa's intent was to conspire with alibi witness, Frances May Ross, when he was in fact shocked that she lied on the stand (Fed. R. Evid. 806 & 106). These statements have their own indicia of reliability in that they were made very close to the time of the events that occurred.[19] Gallman states, "So what the fuck she going to lie to us for?" Scarpa responds, "I don't know." (Exhibit D, P.135, L.2-4). This is not hearsay since it is not being offered for the truth of the matter asserted (Fed. R. Evid. 801). It is instead their *reaction* to the witness lying, which demonstrates their state of mind in prepping the witness, was not to have her lie. (Fed. R. Evid. 806). It is therefore, directly on point.

vi.       Call 40880 from: 1:29 to 2:33 (Exhibit F, P. 137-138 at L. 2-21)

This call is Gallman speaking to an unknown individual and is not being offered to prove the truth of the matter asserted (Fed. R. Evid. 801). *His demeanor* and shock of being accused, of what amounts to witness tampering, is evidence of his *lack* of intent to commit the crime of Bribery. These statements have an additional indicia of reliability in that they were made very close to the time, and while under the stress, of the events that occurred. (Exhibit F, P.137, L.1-3).[20] Furthermore, he clearly indicates that he went to see Cherry, to "see what he going to say at trial. In the process kid said he going to tell the truth." (Exhibit F, P.137 at L.8-10). This shows that he lacked the intent to manipulate Cherry's testimony. His intent in visiting the witness was to influence his testimony, he was visiting the witness in order to see what his testimony would be. The Government has been content to admit numerous recordings in order to demonstrate what was in the mind of Gallman.[21] We ask to admit this recording to refute the same (Fed. R. Evid. 806 & 106).

vii.      Call 26029 (entire call)[22]

This call is between Gallman and another individual.

V= Yo
TA= Yo after this now when you get it here I got two for you um drop them off and then you gotta come back cause I gotta steal from the office today Vic I gotta (talk  over each other) V= Oh
TA= (inaudible) I gotta go to the office and print this shit out the dude gonna give me thr ee hundred dollars for it V= I'm on my way to you now
TA= No but you got to take them home take them home I can't them with me you know
V= (inaudible) (talk over each other)

---

[19] Fed. R. Evid. 803
[20] Fed. R. Evid. 803
[21] Government calls, 3-15; 39; 44-53; 56-57 and 63-66
[22] For the first time we are asking to admit this call. We asked that the Government provide the court with a copy of this call for review as we are unable to burn a copy off the hard drive that we were provided.

TA= I gotta go I gotta go to the office to steal this paperwork so
V=  Oh alright alright I'm on my way to you right now alright
TA= Alright you'll be here in about five minutes right
V=  I'll be there less than (inaubible) about (inaudible) right now
TA= Alright alright alright V= Alright

In light of the court's ruling regarding the relevancy of phone calls demonstrating a close relationship between Gallman and Scarpa,[23] this call is relevant to refute that alleged "close relationship" (Fed. R. Evid. 806 & 106). It is not being offered for the truth of the matter asserted (Fed. R. Evid. 801). We offer this call to show that Gallman will do things in his own interest that are actually contrary to Mr. Scarpa's. This recording, in addition to being a statement against interest (and as such an exception to hearsay exclusion)[24] goes, like the other calls being admitted by the Government, to the state of mind of Gallman in regards to the bribery. The fact is, that Gallman will put his interests over that of Mr. Scarpa and will undertake crimes without Mr. Scarpa's knowledge or consent. He is not so close to Mr. Scarpa as the Government will attempt to persuade the jury to believe. Since the Government is permitted to enter evidence of their closeness, precisely to prove the bribery, the defense should be permitted to refute that through precisely the same means (Fed. R. Evid. 806 & 106).

## III.    Conclusion

All our requested recordings should be admitted into evidence as non-hearsay statements (Fed. R. Evid. 801). They may also be admitted as statements, which fall under the exceptions to the hearsay exclusions (Fed. R. Evid. 806, 106, 803, 804). As such, we are asking this court to admit all the requested recordings and any further relief the court deems appropriate.

## IV.    Before Admission of any Coconspirator Statements

We turn briefly to the Government's proof and note that *before* the Government may be permitted to enter any co-conspirator statements, they must first present substantial independent evidence to establish a prima facie case of a conspiracy between the parties. They must prove not only a conspiracy between Mr. Scarpa and Gallman, but must also prove a conspiracy between Gallman and *each* of the alleged co-conspirators he is alleged to have spoken with.

---

[23] Proof of close relationship calls 1, 40-42 and 59
[24] Fed. R. Evid. 804
 (3) Statement Against Interest. A statement that:
(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."
*At our conference in court on April 11, 2019 the Government already indicated that Gallman is unavailable due to his planned invocation of the 5th Amendment. We conceded that he would be considered unavailable.*

Under coconspirator exception to hearsay rule, there must *as preliminary matter* be *substantial independent* evidence of conspiracy, at least enough to take question to jury. United States v. Nixon, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (emphasis added).

We further note that mere association with an alleged coconspirator is insufficient to establish a prima facie case. As such, we ask that the Government present an offer of proof as to how they will prove through *substantial independent* evidence a conspiracy between Mr. Scarpa and Gallman and between each coconspirator and Gallman.

An association with an alleged conspirator, without more, is insufficient to establish the necessary foundation for the admissibility of the incriminating statements, United States v. Ragland, 375 F.2d 471, 477 (2d Cir. 1967) citing, United States v. Stromberg, 268 F.2d 256, 267 (2 Cir.), cert. denied, Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); United States v. Bentvena, 319 F.2d 916, 949, 955 (2 Cir.), cert. denied sub nom. Mirra v. United States, 375 U.S. 940, 84 S.Ct. 360, 11 L.Ed.2d 272 (1963); United States v. Cimino, 321 F.2d 509, 510 (2 Cir. 1963), cert. denied, 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964).

The accused must 'in some sort associate himself with the venture, * * * participate in it as in something that he wishes to bring about * * * (or) seek by his action to make it succeed. United States v. Ragland, 375 F.2d 471, 477 (2d Cir. 1967) citing, United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938).

Respectfully submitted,

Steven M. Raiser, Esq.

Cc:   AUSA Keith Edelman (via ECF, email, and Federal Express)
      AUSA Andrey Spektor (via ECF and email)