

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEG:AS/KDE                                                                                              *271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 18, 2019

<u>By ECF, Email and Hand</u>

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. John Scarpa, Jr.
        <u>Criminal Docket No. 18-123 (S-1) (CBA)</u>

Dear Judge Amon:

    The government respectfully submits this letter to offer additional support for its oral argument as to why none of the previously identified communications involving the defendant John Scarpa's primary coconspirator, Charles Gallman, is barred by the rule against hearsay. As the government explained at the April 11, 2019 conference, these communications are admissible for at least one of three reasons, and some are admissible for all three. They are statements made: (1) against Gallman's penal interest, <u>see</u> Fed. R. Evid. 804(b)(3); (2) during and in furtherance of a conspiracy, <u>see</u> Fed. R. Evid. 801(d)(2)(E); and/or (3) by a declarant about his then-existing intention or plan to perform a certain act, <u>see</u> Fed. R. Evid. 803(3).[1]

    Accordingly, the government sets forth below the law applicable to each of these three exceptions to the rule against hearsay as well as a brief analysis section explaining why the relevant calls satisfy each exception. Finally, the government includes below a comprehensive chart describing the calls to which the defendant has objected on hearsay grounds, a list of which hearsay exception(s) apply and a brief explanatory statement.

---

[1] The Second Circuit reviews "evidentiary rulings deferentially, mindful of [the district court's] superior position" to weigh relevance against undue prejudice, reversing only for "abuse of discretion." <u>United States v. Abu-Jihaad</u>, 630 F.3d 102, 131 (2d Cir. 2010). And abuse of discretion is found only when the ruling is "arbitrary and irrational." <u>United States v. Dhinsa</u>, 243 F.3d 635, 649 (2d Cir. 2001) (internal quotation marks omitted). Thus, for example, when reviewing a district court's decision to permit an out-of-court statement under Rule 801, the Second Circuit does not find abuse of discretion unless the ruling was "clearly erroneous"; "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." <u>United States v. Gupta</u>, 747 F.3d 111, 124 (2d Cir. 2014).

I.  Statements Against Penal Interest

   A.  Applicable Law

If a declarant is "unavailable," Rule 804(b)(3) provides an exception to the hearsay rule for statements "against interest." The rule defines a statement against interest as one that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3).

Out-of-court statements are admissible for their truth under this exception if the proponent shows, by a preponderance of the evidence: "(1) that the declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement." United States v. Wexler, 522 F.3d 194, 202 (2d Cir. 2008).

   B.  Analysis

Gallman's statements relating to his visit to Luis Cherry, including his ability to have Cherry testify falsely on behalf of Ross, satisfy all three criteria. *First*, as stated at the April 11 conference, the defendant does not dispute that Gallman is "unavailable" because Gallman's attorney has informed the government that Gallman would invoke the Fifth Amendment if called as a witness at trial by either party. See, e.g., United States v. Nazareno, 65 F. App'x 354, 355 (2d Cir. 2003) ("A declarant is 'unavailable' to testify if his attorney represents that, if haled into court, the declarant will assert his Fifth Amendment privilege against self-incrimination.").

*Second*, all of Gallman's statements about his visit to Cherry are "sufficiently reliable" because a "reasonable person" would have considered the statements "detrimental to his . . . penal interest." United States v. Saget, 377 F.3d 223, 231 (2d Cir. 2004). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context." United States v. Williams, 506 F.3d 151, 155 (2d Cir. 2007). The rule "does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution." United States v. Lang, 589 F.2d 92, 97 (2d Cir. 1978). "Even statements that are on their face neutral may actually be against the declarant's interest." Williamson v. United States, 512 U.S. 599, 604 (1994). Thus, for example, the Supreme Court explained, "'I hid the gun in Joe's apartment' may not be a confession of a crime; but if it is likely to help the

2

police find the murder weapon, then it is certainly self-inculpatory." Id.  Likewise, the Court continued, "'Sam and I went to Joe's house' might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy." Id.  See also United States v. Persico, 645 F.3d 85, 102-03 (2d Cir. 2011) (holding statements admissible under this exception even though they would not have been sufficient to convict the declarant of any crime because they tended to show his membership in a crime family and to support an inference that criminal messages were passed).

Here, a reasonable person in Gallman's position would believe that it was against his penal interest to discuss a planned visit to Cherry after coming up with an idea ("I thought of a motherfucking shit today," Call 4) to manipulate Cherry's testimony in a homicide trial (boasting that Cherry was willing "to do whatever I tell him to," Call 13, and "whatever we want him to," Call 14).  And even if any of Gallman's statements about the visit on their own do not incriminate him, context, as the Supreme Court and the Second Circuit have repeatedly explained, matters.  Thus, for example, his statement that Cherry was willing to "play it" however Scarpa wanted it (Call 8), his remarks about the various benefits he would provide Cherry for the testimony (Call 4), and Cherry's subsequent perjurious testimony, all show that statements about Cherry's visit were self-inculpatory.

*Third*, there are a multitude of corroborating circumstances indicating the trustworthiness of Gallman's statements.  A review of Second Circuit jurisprudence shows that the court has, at times, considered various factors when passing on this hearsay exception, including:[2] (1) the relationship between the declarant and the party with whom the declarant was speaking, see United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995); United States v. Mathews, 20 F.3d 538, 546 (2d Cir. 1994); (2) whether the statement was voluntary or made in a coercive environment, see Mathews, 20 F.3d at 546; (3) whether the statement was made to "curry favor" with authorities, Williamson, 512 U.S. at 603, or instead "made to a person whom the declarant believes is an ally," Mathews, 20 F.3d at 546; United States v. Stratton, 779 F.2d 820, 829 (2d Cir. 1985); (4) whether the declarant was attempting to shift blame to another or minimize his own culpability, Williamson, 512 U.S. at 603; Mathews, 20 F.3d at 546; (5) the existence of corroborating evidence of the declarant's statement, see Wexler, 522 F.3d at 202; (6) the extent to which the declaration was against penal interest, id.; (7) the trustworthiness of the declarant in the context in which the statement was made, United States v. Doyle, 130 F.3d 523, 544 (2d Cir.

---

[2] There is not a rigid test employed by the Circuit; most opinions identify some of these factors in deciding whether statements were properly admitted or excluded.  Moreover, the Second Circuit has expounded upon a similar issue when deciding whether a statement offered pursuant to the penal interest exception violated the defendant's Confrontation Clause rights pre-Crawford.  In those circumstances, the Second Circuit assessed whether the declarant was unavailable and whether the statements bore "adequate indicia of reliability." See, e.g., United States v. Mathews, 20 F.3d 538, 546 (2d Cir. 1994) (internal quotation marks omitted).  Here, the defendant has not invoked the Confrontation Clause in his objections—nor could he because there is no colorable argument that Gallman's statements on the wiretap were "testimonial," as now required under Crawford and its progeny, i.e., there is no indication that he "had any awareness or expectation that [his] statements might later be used at trial." United States v. Goldstein, 442 F.3d 777, 785 (2d Cir. 2006).

3

1997); (8) whether the declarant's statements were contradictory or the declarant recanted, id. at 542-44; and (9) whether the declarant's statement was based on personal knowledge.[3]

Here, without exception, Gallman's statements were voluntary and never made in a coercive environment to "curry favor" with law enforcement. Williamson, 512 U.S. at 603. They were uttered to people he believed to be "all[ies]" and in telephone conversations he believed were private. Mathews, 20 F.3d at 546. Nor was Gallman ever shifting blame or minimizing his role—quite the opposite, he boasted about his own ability to make Cherry do whatever he pleased. His statements about visiting Cherry, being able to offer Cherry a benefit and inviting his false testimony were not only consistent with each other but also corroborated by Gallman's subsequent visit to Cherry and Cherry's perjurious testimony that attempted to exculpate Reginald Ross. They were also all based on personal knowledge (his own visit and his plans with the defendant for Cherry's testimony), and certainly against his penal interest, as later confirmed by Gallman's conviction for bribery based almost entirely on those statements. In short, while the Court need not address each one of these factors, this is the rare case where every single one cuts in favor of the calls' admission.

II.     Statements in Furtherance of the Conspiracy

   A.     Applicable Law

Out-of-court statements are admissible under Rule 801(d)(2)(E) if the Court makes two findings by a preponderance of the evidence: "'first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy.'" United States v. Desena, 260 F.3d 150, 157-58 (2d Cir. 2001) (quoting United States v. Gigante, 166 F.3d 75, 82 (2d Cir 1999)).[4]

With respect to the first requirement, "[i]n determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014). Through this evidence, the government must establish the existence of a conspiracy in which the declarant and the defendant participated. See United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990). "[T]here is no requirement that the person to whom the statement is made also be a member" of the conspiracy, only that "both the declarant and the party against whom the statement is offered be members."

---

[3] This framework applies to statements that incriminate both the declarant and the defendant. See, e.g., Sasso, 59 F.3d at 350 ("A statement incriminating both the declarant and the defendant may possess adequate reliability if (a) the statement was made to a person whom the declarant believes is an ally, not a law enforcement official, and (b) the circumstances surrounding the portion of the statement that inculpates the defendant provide no reason to suspect that that portion is any less reliable than the part that directly incriminates the declarant."); United States v. Bakhtiar, 994 F.2d 970, 978 (2d Cir. 1993) (trustworthiness reflected by fact that declarant's statements inculpated himself as much as the defendant and did not attempt to shift blame).

[4] Statements of a defendant or his coconspirators are only admissible if offered by the government, not the defendant. See Fed. R. Evid. 801(d)(2) (requiring the statement to be "offered against an opposing party").

In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 139 (2d Cir. 2008) (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1191 (2d Cir. 1989)).

The conspiracy that serves as the basis for admission of coconspirator statements may, but need not, be a conspiracy alleged in the indictment. See United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002). In addition, "statements of [the defendant's] co-conspirators are admissible against him, even if made before he joined the conspiracy." United States v. Badalamenti, 794 F.2d 821, 828 (2d Cir. 1986); accord United States v. Farhane, 634 F.3d 127, 161 n.5 (2d Cir. 2011) ("Where statements are made in the course of an existing conspiracy in which the defendant later joins, those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made, on the theory that he assumes the risk for what has already happened in the scheme." (internal quotation marks omitted)).

"As to the second requirement, statements made during the course and in furtherance of a conspiracy must be such as to prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity." Gigante, 166 F.3d at 82 (quoting Maldonado–Rivera, 922 F.2d at 958). "This can include those statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness." Gigante, 166 F.3d at 82. For example, statements that "inform . . . [coconspirators] of the status of the conspiracy are in furtherance of the conspiracy within the meaning of 801(d)(2)(E)." Russo, 302 F.3d at 46.

Even "statements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy." United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994) (internal quotations and citations omitted); see also United States v. James, 712 F.3d 79, 106 (2d Cir. 2013). Similarly, statements that inform a coconspirator "of the identity and activities of his coconspirators" satisfy the "in furtherance" requirement. United States v. Rastelli, 870 F.2d 822, 837 (2d Cir. 1989); accord United States v. Davis, 687 F. App'x 75, 78 (2d Cir. 2017) (summary order). "[S]o long as a coconspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular coconspirator." Gupta, at 747 F.3d at 124.

B. Analysis

Here, all the calls for which the government cites this rule, as noted in the chart below, satisfy both requirements. *First,* the declarant (typically Gallman) and the defendant are part of the same charged bribery conspiracy, among other conspiracies.[5] *Second,* in each one of

---

[5] Although the Court need not reach this issue, for the reasons set forth in the government's motion to admit certain evidence under Rule 404(b), the evidence shows that Gallman and the defendant conspired to influence the testimony of another witness, Melvin Anderson, and participated in an overarching conspiracy to obstruct justice in the Ross case by obtaining a favorable verdict for their client through unlawful means. Because the government submits that all the communications cited in this letter are admissible for the reasons set forth above and in the chart, the Court need not decide whether, for purposes of Rule 801(d)(2)(E), Gallman and the defendant were members of an additional conspiracy other the charged Travel Act offense.

5

the calls, Gallman's statements at a minimum either update co-conspirators about the status of the bribery scheme, see Russo, 302 F.3d at 46, or seek "reassurance, or . . . to induce a coconspirator's assistance, or . . . [to] foster trust and cohesiveness," Gigante, 166 F.3d at 82. And even in calls with individuals who are not necessarily part of the conspiracy, Gallman's statements—such as when he is calling to get a ride to visit Cherry—are made to facilitate the conspiracy to bribe Cherry, and thus qualify under this exception. See, e.g., In re Terrorist Bombings, 552 F.3d at 139.

III. Statements About Then-Existing Intention to Perform Act

    A. Applicable Law

"A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds." United States v. Best, 219 F.3d 192, 198 (2d Cir. 2000) (citing Fed. R. Evid. 803(3), which provides, in relevant part, that a "statement of the declarant's then-existing state of mind . . . such as intent" is not barred by the rules governing hearsay). "If relevant, such a statement may be introduced to prove that the declarant thereafter acted in accordance with the stated intent." Id. The rule is derived from Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 295-96 (1892). Id. The statements must not be about recollections of the past; the Rule must "face forward, rather than backward." Broga v. Ne. Utils., 315 F. Supp. 2d 212, 218 (D. Conn. 2004) (quoting United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993)).

If the declarant's statement is admitted to show a non-declarant's activities then there must be independent evidence that connect the two. See Best, 219 F.3d at 198. But if the declarant's statement is admitted only to show the declarant's actions, the independent-evidence requirement is not imposed. See Persico, 645 F.3d at 100 (distinguishing prior precedent, where statement was inadmissible to show non-declarant's actions without independent corroborating evidence); see also United States v. Pike, 292 F. App'x 108, 112-13 (2d Cir. 2008) (affirming admission, under Rule 803(3), of a murder victim's statement that he was planning to see the defendant).

In any event, the independent-evidence requirement is not a stringent one. Observations of a declarant at a place at which he previously indicated he would be are sufficiently corroborative of the statement. See Best, 219 F.3d at 198 (collecting cases). And "[c]orroboration of the nature of the transaction need not be eyewitness observations and may be provided by circumstantial evidence." Id. See also United States v. Williams, Nos. 05-6036-cr(L), 05-6038-cr(CON), 05-6065-cr(CON), 2007 U.S. App. LEXIS 24725, at *7-8 (2d Cir. Oct. 23, 2007) (explaining that both, the nature of the subsequent action and the action itself can be proven through circumstantial evidence; eyewitness testimony is not required).

    B. Analysis

As set forth in the chart below, Gallman's statements about his intent to visit Cherry to discuss Cherry testifying at the Ross trial are plainly admissible under Rule 803(3). In each instance, Gallman stated his intention to go visit Cherry at Downstate prison as well as his intent to call the defendant after the visit. Even though no independent corroborating evidence is required to show Gallman's conformity with those statements, see Persico, 645 F.3d at 100, there

6

is abundant circumstantial evidence to show that Gallman did in fact meet with Cherry (e.g., prison logs), that the substance of the meeting was about influencing Cherry's testimony (e.g., other calls discussing that Cherry's testimony was malleable and Cherry's actual testimony) and that Gallman did in fact update the defendant immediately after the visit (Call 8).

IV. Statements By Individuals Other Than Gallman, Scarpa and Other Co-Conspirators Are Admissible Non-Hearsay

A. Applicable Law

If statements made by a declarant are admissible under hearsay rules, questions and assertions made in response to those statements are often admissible as non-hearsay. *First*, an "inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement. Because a question cannot be used to show the truth of the matter asserted, the dangers necessitating the hearsay rule are not present." United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990). *Second*, statements of non-declarants or non-defendants "used only to provide context, and not for the truth of the matter asserted" do not implicate the rule against hearsay (or the Confrontation Clause). United States v. Cimino, 639 F. App'x 26, 27 (2d Cir. 2016). Thus, for example, recorded statements of confidential informants are admissible "to place the defendant's own statements in context." Id.; accord United States v. Kloszewski, No. 17-4054, 2019 U.S. App. LEXIS 1338, at *5 (2d Cir. Jan. 14, 2019). See also United States v. Gajo, 290 F.3d 922, 930 (7th Cir. 2002) (observing that it is well-settled that "statements are not hearsay to the extent they are offered for context and not for the truth of the truth of the matter asserted.").

B. Analysis

To the extent the Court rules that only Gallman's statements are admissible in a particular conversation, that does not preclude the entire call's admission because the government will not argue the truth of any statements made by the person to whom Gallman is speaking. Many of these statements are not even assertions, thus not implicating the hearsay rule at all, see Oguns, 921 F.2d at 449, and others merely acknowledge Gallman's statements or give context to what Gallman is saying, see Cimino, 639 F. App'x at 27. And the government does not object, if the defendant wishes, to a limiting instruction explaining that a particular speaker's statements are not being introduced for their truth. Because none of these statements have much significance outside of providing context, there is also no risk of unfair prejudice—certainly not sufficient prejudice that would outweigh their importance in not confusing the jury with heavily redacted conversations. See United States v. Paulino, 445 F.3d 211, 217 (2d Cir. 2006) (explaining Rule 403 analysis in the context of hearsay and noting the "great deference" accorded district courts in this context). Accordingly, to the extent the Court finds that any one of the applicable hearsay exceptions applies, even if just to Gallman's statements as against his penal interest or as evidence of his future intent, the government submits that the entire call should be admitted.

V.  Application to Calls Objected to by the Defendant

At the last conference, the Court inquired about the application of hearsay rules for the calls objected to by the defendant in his opposition to the government's motion in limine. See ECF No. 191, at 8-16.[6]

| Communication | Applicable Hearsay Rule | Further Explanation |
|---|---|---|
| 3 (Gallman and Ykim) | • Rule 804(b)(3) (against penal interest);<br>• Rule 803(3) (then-existing intent to perform act) | • Gallman indicates that he will see if the "kid" will "do the right thing," which subsequent calls, visit, and testimony show was bribing Cherry.<br>• Gallman indicates that his plan was to go to prison ("Downstate"), and Cherry's prison logs in fact show that Gallman visited Cherry. |
| 4 (Gallman and El-Rahim) | • Rule 804(b)(3) (against penal interest);<br>• Rule 803(3) (then-existing intent to perform act)<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | • Gallman states that he "thought of a motherfucking shit today," and narrates possible testimony he wanted Cherry to give, which is against his interest.<br>• Gallman indicates his plan to visit Cherry and does later in fact go see Cherry.<br>• He is calling El-Rahim for the purpose of getting a ride to see Cherry. |
| 5 (Gallman's text messages to El-Rahim) | • Rule 804(b)(3) (against penal interest);<br>• Rule 803(3) (then-existing intent to perform act)<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | *Same reasons as in call 4* |
| 6 (Gallman and Scarpa III) | • Rule 804(b)(3) (against penal interest);<br>• Rule 803(3) (then-existing intent to perform act) | • Gallman confirms that he is close to the jail to see Cherry, tying him to the incriminating visit.<br>• Gallman states that he is 30 minutes from the jail, and confirms that he planned to be there until lunch. |

---

[6] The defendant did not object on hearsay grounds to most of these communications and did not move to exclude the calls in his original motion. The Court overruled his objection as to relevance with respect to most of the calls, but inquired and requested further briefing about applicable hearsay exceptions. Further, as to those calls that were the subject of the government's motion under Federal Rule of Evidence 404(b), the defendant did not identify any additional objection to their admission (aside from his opposition to the Rule 404(b) application).

8

| | | |
|---|---|---|
| | • Rule 801(d)(2)(E) (furtherance of conspiracy) | • Gallman is directing Scarpa III to update a co-conspirator (the defendant) on the progress of the conspiracy. |
| 7 (defendant's voicemail) | | *No hearsay issue because it is the defendant's own statement* |
| 8 (Gallman and the defendant) | | *No hearsay issue; Court overruled the defendant's request to excise a portion of this call, which would cut critical context* |
| 9 (text message from Gallman to Crystal Cincotta) | • Rule 804(b)(3) (against penal interest);<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | • "[J]ust left the visit he will do whatever we need him to do."<br>• Cincotta is Ross's wife and other calls (including Call 10 and 15) show her involvement in the scheme to bribe Cherry. |
| 10 (Gallman and Crystal Cincotta) | • Rule 804(b)(3) (against penal interest);<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | • "Oh my God, Crystal this is beautiful. I mean, this kid, here—"<br>• *Same as above* (the "letter" is a likely reference to the letter Ross wrote to Cherry directing Cherry to submit another false affidavit exculpating Ross). |
| 11 (Gallman and Box) | • Rule 804(b)(3) (against penal interest) | • Ties Gallman to the visit, and reveals his discussion with Cherry about conferring a benefit in exchange for Cherry's testimony ("He want me to try and help him get rid of some of that 62.") |
| 12 (Gallman and Box, continuation of same call) | • Rule 804(b)(3) (against penal interest) | • Same as above: "He said, 'TA, I'll flip back only if you promise to help with the case.' I said, 'Sure, I'm gonna help you with the case, man!'"). |
| 13 (Gallman and Rose Barrett) | • Rule 804(b)(3) (against penal interest);<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | • "This kid is willing to do whatever I tell him to."<br>• Updating and reassuring a co-conspirator, Rose Barrett, Ross's (and Cincotta's) friend, who responds in this call, "I believe you, but I wanted to tell you something." |
| 14 (Gallman text messages to Barrett) | • Rule 804(b)(3) (against penal interest);<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | *Same as above* as Gallman writes, among other things "Super Stupid [Cherry] will do whatever *we* want him to" (emphasis added)). |
| 15 (Gallman and Crystal Cincotta) | • Rule 804(b)(3) (against penal interest);<br>• Rule 801(d)(2)(E) (furtherance of conspiracy) | • "[W]hat Cherry is going to say is going to blow everybody's mind," i.e., Cherry will provide new and important (but false) testimony to exculpate Ross<br>• Updating and reassuring co-conspirator, while co-conspirator questions the strategy of using Cherry before the same judge involved in Cherry's case. |

9

| | | |
|---|---|---|
| 44 through 48 (The defendant text messages Gallman) | | *Ruled admissible by the Court* |
| 49 (call between Gallman, the defendant and Scarpa III) | | *Ruled admissible by the Court* |
| 50 (call between Gallman and the defendant) | | *Ruled admissible by the Court, including portion requested by the defendant* |
| 51 and 52 (calls between Gallman and Scarpa III) | | *Precluded by the Court. The government may seek to play call 51 (and others) on rebuttal, depending on the defendant's arguments.* |
| 53 (call between the defendant and Gallman) | | *Withdrawn by the government* |

VI. <u>Conclusion</u>

        For the reasons set forth above, the government respectfully requests that the Court permit the government to introduce all the communications identified above as they are not precluded by the rule against hearsay.

                                                  Respectfully submitted,

                                                  RICHARD P. DONOGHUE
                                                  United States Attorney

                       By:       /s/
                                                  Keith D. Edelman
                                                  Andrey Spektor
                                                  Assistant U.S. Attorneys
                                                  (718) 254-6328/6475

cc:      Counsel of record (by email and ECF)