UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X          18 Cr. 123 (S-1) (CBA)
UNITED STATES OF AMERICA


              -against-

JOHN SCARPA,
                            Defendant
-------------------------------------------------------------------X


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOHN SCARPA'S MOTION




Bruce R. Connolly
Raiser & Kenniff, P.C.
300 Old Country Road, Suite 351
Mineola, New York 11501
516-742-7600
connolly@raiserandkenniff.com

*Attorneys for John Scarpa*

1

**TABLE OF CONTENTS**

STATEMENT.................................................................................................3

PROCEDURAL HISTORY..........................................................................3

LEGAL STANDARD....................................................................................3

FACTUAL BACKGROUND..................................................................…….....4

ARGUMENT................................................................................ …….6

I.    **THE LACK OF EVIDENCE PROVING A BENEFIT WAS KNOWINGLY OFFERED BY MR. SCARPA AND ACCEPTED BY CHERRY**...............................6

II.   **THE INSUFFICIENT EVIDENCE TO SUSTAIN A CONSPIRACY CONVICTION**.............................................................10

III.  **THE INSUFFICIENT EVIDENCE TO SUSTAIN A BRIBERY CONVICTION** …………………………………………....……......13

    A. There was no evidence presented of the offer to confer a benefit on Cherry…………...14

        1.  Appeal…………………………………………………………15

        2.  Protection/Prestige in Prison…....………………………………………...17

IV:   **THE SUPERFLUOUS ALLEGATIONS INTENDED TO INFLAME AND CONFUSE THE JURY** ...........................................................18

V.    **ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL IN THE INTEREST OF JUSTICE** …………………………............................................20

CONCLUSION ........................................................................................ 21

Defendant John Scarpa respectfully submits this memorandum of law in support of his motion under Rules 29 and 33 of the Federal Rules of Criminal Procedure for the relief requested in the accompanying Notice of Motion.

## PROCEDURAL HISTORY

From May 20, 2019 through May 23, 2019, this Court conducted the trial against Mr. Scarpa for the charges of Conspiracy to use Interstate Facilities in Aid of Racketeering and Use of Interstate Facilities in Aid of Racketeering (18 U.S.C. §§ 371 and 1952(a)(3)(A)). See S1 Indictment, ECF No. 74, ¶¶ 4-6. Mr. Scarpa moved for a judgment of acquittal at the conclusion of the Government's case-in-chief and renewed the motion upon the close of the evidence (Tr. 547-554, 558). The Court reserved decision on this motion (Tr. 556) and, after the defendant was convicted of both counts on May 23, 2019, set a schedule for the submission of the instant motion (See ECF No. 220).

## LEGAL STANDARD

On a defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  This motion should be granted if the court concludes there is "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *U.S. v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972). To prevail, a defendant must show that when viewing the evidence in a light most favorable to the Government, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 334 (1979); *U.S. v. Gaines*, 295 F. 3d 293, 299-300 (2d Cir 2002).  The court may not, however, indulge "specious inferences;" nor would it satisfy the constitution to have a jury determine that a defendant is

3

"probably guilty." *U.S. v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008).  The Second Circuit has stated that if the evidence viewed in the light most favorable to the Government gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonably jury must necessarily entertain a reasonable doubt.  *U.S. v. Cassesse*, 428 F.3d 92, 99 (2d Cir. 2005).  Finally, the government must present *substantial* evidence as to each element of the offense from which a jury could find a defendant guilty beyond a reasonable doubt. *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985) (emphasis added).

## FACTUAL BACKGROUND

On or about September 24, 2018, Mr. Scarpa was indicted on two counts in a superseding indictment (three other defendants had previously been indicted).  Count Three accused him of conspiracy to use interstate facilities to aid in racketeering.  Count Four accused him of using interstate facilities in aid of racketeering. The indictment alleged that Mr. Scarpa and co-defendant Charles Gallman conspired to use a cellular phone to facilitate the crime of bribery, in violation of New York Penal Law § 215.00.  The events that led to this misguided prosecution allegedly occurred between January and March 2015, when Mr. Scarpa was trying a murder case in Suffolk County (the "Ross trial.").[1]   The events surrounding Mr. Scarpa's trial preparation provided the basis for this unfounded and overreaching prosecution, which came nowhere close to establishing a conspiracy to commit bribery of a witness.

Counts Three and Four of the Indictment allege conspiracy and bribery of a potential witness named Luis Cherry in exchange for his testimony in the Ross trial.  The Government

---

[1] The Queens District Attorney had secured numerous wiretap orders from the Queens County Supreme Court to investigate Gallman's alleged criminal activity relating to dealings with other co-defendants in this case. The facts contained in the search warrant affidavits and orders do not allege any criminal activity on the part of Mr. Scarpa. Law enforcement stumbled upon Mr. Scarpa when he appeared on some select recordings during this time period.

added superfluous and prejudicial content in the indictment's overt acts, which had nothing to do with the bribery charges against Mr. Scarpa.  Over the course of the trial, the Government's strategy was to focus the jury's attention on the evidence concerning these superfluous acts and away from the lack of evidence on the actual indictment charges.  This is because the bribery charges in the indictment stemmed from alleged activity that was quite limited in scope and for which no actual evidence existed.  The evidence produced at trial included many recorded phone conversations between Scarpa and co-defendant (and recycled felon) Charles Gallman speaking in an unflattering manner and calls between Gallman and third parties, which were ripe with hyperbole about the legal miracles Gallman could perform for inmates serving lengthy prison sentences in New York.

The Government's proverbial smoking gun was contained in Gov't. Trial Exhibit 10-T (hereinafter "GX-10-T"), and this is where evidence of bribery should theoretically be found, if it existed.  GX-10-T was a recorded conversation between Scarpa and Gallman that took place on January 13, 2015, where Gallman called Scarpa to summarize the contents of his recent visit with Cherry in prison.  While describing this meeting in Gallman's typical elaborate and exaggerated manner, Gallman conveys to Scarpa that they have nothing to worry about in the Ross trial by stating, "Whatever you need, John, whatever you need" and "Anything we need, he's willing."  (GX-10-T).  After parsing through Gallman's embellishments, there is nothing contained in this central piece of evidence to establish that Gallman or Scarpa offered Cherry anything in exchange for his testimony.  Gallman refers to a "bunch of stuff I wrote down that he wants" (GX-10-T), but there was no actual evidence presented about this supposed list of items.

In order to compensate for the blatant lack of evidence in their "smoking gun," the Government had to focus their attention on the cumulative effect of the other recordings, which

were *not related* to the specific bribery charges against Mr. Scarpa. The defense argued from the start of this case (and this issue was heavily litigated in pre-trial motions) that this evidence would serve to confuse and conflate the issues to the jury. This is exactly what happened as, when faced with countless calls between Scarpa and Gallman, many of which discussed other disconcerting activity, the jury could not distinguish between these and the actual charges in the indictment. As a result, the jury convicted based upon a disdain for Mr. Scarpa's alleged bad acts rather than on the specific elements of the bribery charge. As will be set forth in more detail below, this evidence, while inflaming the jury, did not establish the elements of either conspiracy or bribery, which were required to convict Mr. Scarpa of the two charges contained in the indictment. Therefore, the defendant's instant motion must be granted.

## ARGUMENT

**POINT I:     THE LACK OF EVIDENCE PROVING A BENEFIT WAS KNOWINGLY OFFERED BY MR. SCARPA AND ACCEPTED BY CHERRY**

The Government set forth two possible benefits that were allegedly conveyed to, and accepted by, Cherry in exchange for his testimony, with at least the alleged knowledge and acquiescence of Mr. Scarpa. Those two benefits were "prestige" and an appeal.

In the Government's attempt to generally prove both benefits, they set forth GX-10-T, referenced above. In this conversation Gallman calls Scarpa to summarize the contents of his recent visit with Cherry. Gallman conveys to Scarpa that they have nothing to worry about in the Ross trial by stating, "Anything we need, he's willing." Gallman further indicates that there was a "bunch of stuff I wrote down that he wants," which would later be sent via text. However, there was no evidence that this text was ever sent, and therefore the jury must rely on the call alone.

The call clearly states what Cherry wants if he is called to testify, namely, a cigarette pack with DNA on it, i.e. a piece of evidence. As such, there is *no* reasonable view that this call

has anything to do with a benefit to substantiate a bribery. In fact, because the call is clear in what was being requested, there is no view of this piece of evidence that could be used, in conjunction with any other evidence, to cumulatively prove the conveyance of a benefit to substantiate a bribery.

The first benefit allegedly conveyed and accepted is "prestige" or spreading the word to make Cherry's name "real good." (Gov't. Trial Ex. 6-T). Yet, there is *nothing in the record* to demonstrate, number one, that Mr. Scarpa was *aware* that Gallman wished to spread prestige if Cherry testified and number two, that this alleged benefit was ever *conveyed to Cherry* as a reward for his testimony. The Government went to great lengths to show that Gallman's intent was to give Cherry this benefit and that he had the means to do so, but nothing to demonstrate *the actual conveyance* of this offer to Cherry. What the evidence shows is that Gallman wished to reward Cherry for his testimony, not that he offered to reward him *in exchange* for his testimony. While this distinction may have been lost on the jury, it goes to the very heart of proof of the crimes charged in this case.

The next benefit allegedly offered and accepted is the appeal. The Government relied on the following pieces of evidence to substantiate the appeal being offered by Mr. Scarpa to Cherry through Gallman.  The first piece is Gov't. Trial Ex. 14-T.  In this call, Gallman acknowledges an agreement to "help Cherry with his case" if Cherry is willing to testify at the Ross trial. It should be pointed out that in so doing, he does not mention Mr. Scarpa. In fact, he uses words like "I". He does not at any time during discussions about helping Cherry with his case say "we" or "us." This is similar to Gov't. Trial Ex. 13-T – "he want *me* to try and help him get rid of some of that 62," which is also consistent with there being no proof of Mr. Scarpa's knowledge that any help with an appeal was being offered *in exchange* for favorable testimony.

It is true that Mr. Scarpa acknowledges that Gallman talked to Cherry about an appeal in Gov't. Trial Ex. 28-T, where Gallman says, "Yes, somebody contact me to go up there and see Mr. Cherry and talk to him about his case and possibly helping him his appeal." Scarpa responds, "Well, that's true." Considering this call and the rest of the evidence offered by the Government, Mr. Scarpa never acknowledges *agreeing* to help him with that appeal, nor was there any proof that Mr. Scarpa was offering an appeal in order to convince Cherry to testify.

The Court should keep in mind, as the jury was required to, that Mr. Scarpa is an attorney and speaking with someone about an appeal is not outside the scope of an attorney's stock and trade. The jury is not free to assume that, because Mr. Scarpa shared in Gallman's intent to talk to Cherry about an appeal that he must therefore also have shared in Gallman's alleged intent *to influence his testimony* by offering him help on his appeal. Nor is Mr. Scarpa's shared desire with Gallman to have Cherry testify the same as sharing in Gallman's intent to *get Cherry to testify* by means of offering an appeal in particular, or any benefit generally.

Furthermore, the Court should take note that the appeal, relied upon as the main benefit the Government sold to the jury to prove their case, was filed by someone other than Mr. Scarpa or Gallman (See Defendant's exhibits, A-C). The reason why this is important is that the Government went to extensive lengths to circumstantially prove half of their case, namely that Cherry *accepted a bribe*, by simply demonstrating that Cherry testified and lied on the stand. This, according to the Government, was the reason to turn this case into a trial about a trial, thereby bringing out, among other things, the details of vicious homicides into the consideration of the jury.

The jury made an apparent finding that the Government proved the acceptance of a bribe by Cherry's decision to testify. While the jury is not free to make such speculative leaps it must

at least be expected to apply such rationale equally, by finding Cherry's decision not to use Mr. Scarpa for his appeal as sufficient proof that *the alleged benefit* to testify must *not* have been the appeal. That would leave the jury with the remaining alleged offer of prestige, which, as noted above, was never proven to have actually been conveyed.

There is no evidence that supports the notion that Mr. Scarpa offered a benefit to Cherry to testify. There are additional calls that may tend to prove Gallman had the intent to do so or that Gallman discussed a *quid pro quo* of some sort, at least in regards to the appeal (ex. Gov't. Trial Ex. 6-T, 7-T, 11-T, 15-T). These other calls could be categorized as blustering to other individuals and did not involve Mr. Scarpa. Therefore, they do not in any way add to the culpability of Mr. Scarpa. There is no evidence that supports the notion, and certainly not beyond a reasonable doubt, that Mr. Scarpa, agreed to, planned, acquiesced in, encouraged, or directly conveyed an offer, of any kind, to Cherry in exchange for his testimony in the Ross trial.

Yet, there is evidence to the contrary. In Gov't. Trial Ex. 6-T, Gallman says, in sum and substance, I have to get Cherry to say Kyle Green was the shooter. Now, the Government used this call to prove Gallman had manipulated Cherry's testimony through bribery. Yet Cherry *never* testified to Kyle Green shooting anyone. Any reasonable jury would have to have seen this as proof, not of a bribery, but proof to the contrary, that no offer of Gallman's was ever accepted by Cherry to testify for Ross, because Cherry did not testify according to the wishes or direction of Gallman.

Furthermore, the trial was not without a record as to what motivation Cherry could have had other than bribery. Cherry, based on the record, decided to testify in order to benefit himself, proving his own street cred by testifying for Ross and telling ADA Biancavilla exactly what he

thought of him in open court (the motive of which was the denial of Cherry's belief that ADA Biancavilla promised him concurrent time).

The Government has filled the record with details about intimidating witnesses, suborning perjury, concocting testimony, association with homicidal maniacs, and unethical behavior. While this Court ruled such evidence to be admissible, none of it was sufficient to prove beyond a reasonable doubt that *a benefit* was conveyed by Mr. Scarpa to Cherry in exchange for his testimony.

**POINT II:     THE INSUFFICIENT EVIDENCE TO SUSTAIN A CONSPIRACY CONVICTION**

To be guilty of conspiracy, a defendant must have knowledge that a common endeavor existed. *See, U.S. v. Falcone*, 311 U.S. 205 (1940). There must be some evidence from which it can be reasonably inferred that a defendant knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it. *U.S. v. Gavrina*, 740 F.2d 174, 183 (2d Cir. 1984)). Suspicious circumstances are not enough to sustain a conviction for conspiracy. *See U.S. v. Tyler*, 758 F.2d 66 (2d Cir. 1985). The Second Circuit has explained that conspiracy is a specific intent crime (See *U.S. v. Morgan*, 385 F.3d 196, 206 (2d Cir. 2004)) and the evidence must permit a reasonable juror to be convinced beyond a reasonable doubt not simply that a defendant aided and abetted a bribery but that he had agreed to do so. See *U.S. v. Brown*, 776 F.2d 397, 402 (2d Cir. 1985); *U.S. v. Borelli*, 336 F.2d 376, 383-384 (2d Cir. 1964). Active participation with intent to further the objectives of the conspiracy, rather than mere association with unsavory individuals, is required. See *U.S v Provenzano*, 615 F.2d 37, 45 (2d Cir. 1980).

Here, the Government did not present sufficient evidence to sustain the conspiracy conviction.   First, there was no evidence presented as to the conspiracy's existence.   The

evidence did not establish that Scarpa and Gallman entered into any kind of agreement to violate the law or came to a mutual understanding as to what the unlawful act was and how it was to be accomplished. It simply does not exist in the recordings or anywhere else in evidence.

Next, there was no evidence presented as to Mr. Scarpa's membership in the conspiracy. To become a member in a conspiracy, Mr. Scarpa must have joined willfully, with knowledge, and in furtherance of its unlawful purpose. See *Gavrina, supra*.  His imprudent decision to associate himself with Gallman does not rubber-stamp automatic membership in the conspiracy. Even the 350 calls recovered by the wiretap between the two individuals, while perhaps establishing a close working relationship between the two, do not establish the requisite conspiracy membership.

In addition, knowledge is not enough to make Mr. Scarpa a member of this conspiracy. See *Gavrina, supra*.  Assuming (facts most favorable to the Government) that Mr. Scarpa knew, suspected, or secretly approved of Gallman's actions to attempt to bribe Cherry, this does not establish that he was a member of this conspiracy, and the evidence was insufficient to support this theory.  Similarly, if Mr. Scarpa, through his actions, unknowingly happened to further the purposes or objectives of a charged conspiracy (such as sending Gallman to take Cherry's temperature about testifying), this also does not establish the membership element.  In other words, Scarpa sending Gallman to talk to Cherry does not mean he was part of a conspiracy. There is no evidence before, during, or after that meeting at the prison that Scarpa ever instructed or agreed to offer something of value to Cherry to entice him to testify in the Ross trial.

Finally, there was insufficient evidence that either Gallman or Scarpa knowingly committed at least one of the overt acts listed in the indictment in order to further some unlawful objective of the conspiracy.  See *Provenzano, supra*.  During the course of the trial, the

11

Government proved that many of these overt acts actually did take place, but their occurrence is where the evidence stopped.  There was insufficient evidence to establish that any of these acts were done to further an unlawful objective of the specific conspiracy alleged in the indictment. Gallman may have committed many unsavory acts, which were brought out during the trial, but these acts cannot be attributed to Mr. Scarpa simply because the two had a working relationship. The fact that Gallman may have intended to offer appellate assistance to Cherry in exchange for his testimony cannot be attributed to Scarpa, as there is no evidence to support this.  Moreover, if the conspiracy did not exist or if Mr. Scarpa did not join it, and the defense submits that neither of these elements were established, the Government's proof of the many overt acts is irrelevant, as they were not done to further a non-existent conspiracy.

Finally with respect to conspiracy, a review of the sufficiency of the evidence of conspiracy must look to both direct and circumstantial evidence of an agreement among the alleged co-conspirators.  See *U.S. v. Nusraty*, 867 F.2d 759, 763 (2d Cir. 1989)).  Here, there was no direct evidence of an agreement.  The Second Circuit has stated that if the evidence viewed in the light most favorable to Government gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonably jury must necessarily entertain a reasonable doubt.  *U.S. v. Cassesse*, 428 F.3d 92, 99 (2d Cir. 2005).

In conclusion, the evidence did not establish that a conspiracy existed or that Mr. Scarpa entered the conspiracy with knowledge of the unlawful purpose charged in the indictment and with the intention of aiding in the accomplishment of that unlawful objective. This intention had to be knowing, willful, or with the specific intent to further its illegal purpose, and the evidence was grossly insufficient to establish these elements.  With insufficient evidence to sustain a conviction, this Court must grant the defense's Motion for Acquittal on the Conspiracy Count.

**POINT III.     THE INSUFFICIENT EVIDENCE TO SUSTAIN A BRIBERY CONVICTION**

To be guilty of bribery in this matter, a defendant must have used his cellular phone with the intent to promote, manage, establish or carry on the bribery of a potential witness.  See 18 USC § 1952(a)(3).  Pursuant to the New York Penal Law, a person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness or a person about to be called as a witness in any action or proceeding upon an agreement or understanding that the testimony of such witness will thereby be influenced.   N.Y. Penal Law §215.00.  "Benefit" is defined as any gain or advantage to the beneficiary and includes any gain or advantage to a third person pursuant to the desire or consent of the beneficiary.  N.Y. Penal Law § 10.00(17).  The "agreement" between the bribe-giver and the bribe-receiver must be mutual, or the understanding must be at least a unilateral "perception or belief" in the mind of the bribe-giver that the bribe will influence the receiver's conduct. If a benefit is offered or conferred with only the hope that the bribe-receiver would be influenced thereby, then the crime of bribe-giving is not committed.  See *People v. Tran,* 80 N.Y.2d 170, 176-78 (1992).

Here, there was insufficient evidence that Mr. Scarpa used a cellular phone with the intent to promote, manage, establish or carry on the bribery of Luis Cherry.  The only specific evidence the jury heard about Mr. Scarpa's intent, after hours of recordings and transcripts, came in Gov't. Trial Ex. 29, where Mr. Scarpa states that his intent was to establish that Cherry was a liar ("I'm trying to prove this stupid bastard is a freaking liar").  There is no recorded conversation where Scarpa instructs Gallman to visit Cherry for the purpose of bribing him.  As such, there was no evidence that Scarpa intended the advancement of bribery to result from his use of a cellular phone.  In fact, there was no evidence that Scarpa asked Gallman to visit Cherry, but rather Gallman stated that he went as a favor to Ross's uncle, who was a friend of Gallman's.

The analysis below will elaborate further on the crucial arguments that were made in Point I, which demonstrate the glaring deficiencies in the Government's evidence in this case.

### A.  There was no evidence presented of the offer to confer a benefit on Cherry

As set forth above in Point I, perhaps the most glaring defect in the Government's evidence is the lack of a benefit offered to Cherry as the crux of the alleged bribery.   If there was no benefit offered, there was no bribery, and thus no illegal act (and no conspiracy to commit an illegal act).  As such, the evidence failed to establish that the activities the defendant intended to facilitate were, in fact, unlawful under New York's bribery law.  In their opening statement, the Government promised that the jury would hear evidence about an offer of free help with an appeal and prestige in the prison system (Tr. 25).   However, since there was no direct evidence of Gallman making any offers to Cherry, the Government was forced to compensate for this weakness in their case by piling on mountains of other recorded calls where Scarpa and Gallman were engaged in seemingly unscrupulous behavior.  The Government wagered that this glaring deficiency would be lost on the jury among the other evidence, and the bet paid off when the jury convicted.

In addition to the lack of evidence about an offer, there was also no evidence about what benefit Cherry was to receive in exchange for his testimony. GX-10-T, the Government's supposed smoking gun, contains nothing about an offer or a benefit.  In short, the smoking gun contains no evidence of bribery and does not include the supposed list of items that Cherry wanted.  The Government produced no evidence about drugs, money, or an increase to Cherry's prison commissary.  The only alleged benefit the Government could produce was a pack of Newport cigarettes with DNA on them, and since this is clearly not a benefit but rather a piece of evidence from the Ross trial, the bribery charge cannot stand.  The evidence did not establish any

14

agreement between Cherry and Gallman.  There was no evidence, be it testimony or recordings, where Gallman and Cherry make an agreement for a benefit in exchange for influenced testimony. In addition, long before Scarpa entered the Ross case, Cherry had already written the court about his intended testimony. There was no discussion that he had been promised anything then, nor proof that he was offered anything after Scarpa entered the case. From the evidence offered at trial, it seems quite clear Cherry was not asking for anything that would change his testimony, as he had already changed his statements numerous times without anyone from Scarpa's office contacting him and asking him to do so.

These issues were raised by the Court after the Defendant's motion for a judgment of acquittal at the close of the Government's case.  When questioning the Government during their response, the Court asked "Well, why don't you address yourself to the benefit that was offered, that testimony regarding the benefit that was offered" (Tr. 555). After an attempted explanation by the Government, the Court continued, "Well, the benefit has to be offered, doesn't it?...I mean, you must offer the benefit…It doesn't have to ultimately be bestowed but it has to be offered." (Tr. 555).  The Court later said, "So you say you have circumstantial evidence that the benefit was offered because Gallman said he was going to offer it, he goes to see Cherry and then Cherry does what, in fact, he asked him to do" (Tr. 556). During this discussion, it appears the Court was considering this important issue and pressed the Government to provide a satisfactory explanation, which they were unable to do.

**1. Appeal**

As stated in Point I above, the Government stressed during the trial that one of the benefits offered by Gallman to Cherry was a free appeal (Tr. 25).  However, there was no evidence presented of Gallman conveying to Cherry that, in exchange for his testimony, Scarpa's

law firm would handle his appeal.  There was no evidence of an offer to assist with his appeal as the benefit for the testimony, and no evidence of appellate work in exchange for testimony.  The Government cannot work their way around this fact.   There was, indeed, much evidence presented about an appeal, but most of this was Gallman bragging to third parties about his legal acumen and ability to work miracles for inmates serving lengthy prison sentences.

Since there was no direct evidence of an offer of appellate assistance, the government relied on circumstantial evidence, which consisted mostly of Gallman's bragging.  Still, this circumstantial evidence was directly contradicted by Defense Exhibits A through C, which established that Cherry already had "free" appellate attorneys (not associated with Mr. Scarpa) working to overturn his two convictions.  When asked whether these attorneys had any connection to Scarpa or Gallman, ADA Biancavila testified that he was not aware of any connection as to the Suffolk attorneys and did not know the Queens attorneys (Tr. 224-225).  If Mr. Cherry had already received appellate attorneys from the county at no cost to him, it defies logic as to how he could be bribed with appellate assistance from Scarpa's law firm.   Moreover, proof of the notices of appeal filed by other attorneys is circumstantial evidence that "a free appeal" was not offered by Scarpa in exchange for Cherry's testimony.

Turning to the evidence that was presented about appeals, the Government relied heavily on the exhibits discussed in Point I, where Gallman describes to third parties the magic he will work on behalf of Cherry to reduce his prison time.  As discussed above, while Gallman may have planned to offer appellate help to Cherry and Scarpa may have known about the potential to assist with an appeal, neither of these facts establish that appellate assistance *was actually offered* to Cherry.  Gallman may have discussed it with others, and even with Scarpa, but without evidence of an actual offer conveyed to Cherry, the "offer" element of the bribery charge was not

met. The Government attempted to confuse the jury with circumstantial evidence about the appeal in the hopes they would jump to the conclusion that the offer must have been conveyed to Cherry at the Gallman meeting.  However, this was an impermissible inference for the jury to make without the required evidence.

In sum, there was no evidence presented at the trial that an offer of appellate assistance was made to Cherry in exchange for  testimony.  Without direct evidence of this offer, the circumstantial evidence presented was insufficient to establish the requisite elements of the bribery charge with respect to the appeal.

**2**.**Protection/Prestige in Prison**

The Government also stressed during the trial that one of the benefits offered to Cherry was protection and prestige in the prison system.  The evidence to support this again focused on Gallman's bragging to everyone who would listen about the miraculous things he would do to help Cherry's sixty-two years pass more smoothly.  While Gallman mentions this supposed benefit to third parties, these recordings do not provide the requisite evidence that this benefit was, in fact, offered to Cherry.  Nor is there any proof Scarpa authorized, instructed, or even knew Gallman offered that or that Scarpa even knew Gallman had the ability to do those things successfully (or otherwise).

Without this direct evidence, the analysis could end here.  However, evidence was brought out during the trial about the outlandish nature of this benefit.  This theory was quickly negated by testimony from ADA Biancavilla that Cherry was completely "unfazed" by everything that was happening around him (Tr. 267).  He showed no remorse when describing his killings (Tr. 275-76).  Cherry said that he wanted to see his victim looking at him and watch the bullet enter his face and how he would have killed his father if he was the one who left the

house.  (Tr. 276).  He even laughed in the victim's face when he begged for his life.  (Tr. 276).
Cherry tried to spit in the face of ADA Biancavilla in open court, and said vile things about his
wife and mother.  Cherry said, "I take what I want" (Tr. 350) in prison, whether it is from fellow
inmates or corrections officers.  He attacked a corrections officer with his own baton in a brutal
beating and thought it was pretty funny (Tr. 266).  The cross-examination of Biancavilla clarified
that the notion that someone like Cherry would be enticed to take a bribe in exchange for prison
prestige and protection was nonsensical.  This is not the type of person who would need
protection in jail or an enhanced reputation and therefore, it is unreasonable to believe that this
was the benefit he was offered by Gallman or that it would have been a benefit even had it been
offered to him.

In sum, while the evidence established that Gallman bragged to third parties about
helping Cherry's jail reputation, there was no evidence presented that this benefit was actually
offered to Cherry or was requested by Cherry when Gallman or Scarpa visited him. Without
evidence of this nature, the Government's theory that prestige and protection in prison was the
benefit used to bribe Cherry must fail.  As such, there is insufficient evidence to sustain a
conviction to support the bribery charge, and therefore, this Court must grant the defense's
Motion for Acquittal as to the Bribery Charge via the Travel Act.

**POINT IV:     THE SUPERFLUOUS ALLEGATIONS INTENDED
                        TO INFLAME AND CONFUSE THE JURY**

Weakened by their considerable lack of evidence, the Government relied on irrelevant,
inflammatory, and prejudicial assertions during the trial in an effort to inflame the jury, confuse
the issues, and blur the elements necessary for conviction.  Realizing the obvious lack of
evidence for the specific bribery charges in the indictment, the Government chose instead to

pound away at endless recordings that painted Mr. Scarpa in an unflattering light in order to convince the jury that other activity must mean that he was guilty of the crimes charged.  A vast majority of the recordings offered by the Government had nothing to do with the bribery charges in the indictment.  For example, the Government spent a considerable amount of time with the recordings of Scarpa's and Gallman's efforts to "pack the courtroom" in an effort to intimidate Melvin Anderson.  Since Mr. Scarpa was not charged with conspiring to intimidate a witness, this call had nothing to do with the alleged bribery of Cherry and served merely to prejudice the jury against Mr. Scarpa.

The Government also spent much time and effort on the recordings of Scarpa and Gallman discussing ways they could mold testimony about the prevalence of guns in Queens. *See*, Gov't. Trial Ex. 42.  While these conversations were unsavory, Mr. Scarpa was not charged with fabricating testimony or suborning perjury and this call had nothing to do with the alleged bribery of Cherry and again served merely to prejudice him. Finally, the Government spent a considerable amount of time on Gov't. Trial Ex. 54, especially in their summation.  This was the call where Scarpa and Gallman explore the potential of having Gallman testify to provide an offer of proof on certain facts.  In this call, Gallman and Scarpa discuss obvious falsehoods, which, had they actually been offered in court may have been unethical and untruthful, but this is not what Mr. Scarpa was indicted on.  In this call, the Government played to the emotions of the jury in a very effective manner, as they repeated the sinister laughs of the two parties, which served no purpose other than to disgust the jury.  This call, while distasteful, did not concern the bribery of Cherry and therefore should not have been used in this manner as it was inflammatory and prejudicial.

All of this extraneous evidence constituted irrelevant and overly prejudicial acts that were not and in fact could not be charged. These discussions did not apply to nor were they proof of uncharged crimes in furtherance of the specific indicted conspiracy.  The Government used this evidence to inflame the jury, confuse the issues, and blur the elements necessary for the actual indictment counts.  This case was about whether Gallman offered a benefit to Cherry in order to get him to change his testimony, and there was no evidence presented to support this.  This evidence is strikingly absent from all the unseemly phone calls and all the testimony in this case, where it was not proven that Mr. Scarpa offered a benefit to Cherry in exchange for his testimony.

**POINT V:    ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL IN THE INTEREST OF JUSTICE**

Rule 33 of the Federal Rules of Criminal Procedure invests the Court with "broad discretion … to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001).  See*, U.S. v. Davidson*, 308 F. Supp. 2d 461, 465 (S.D.N.Y. 2004) (McMahon, J.) ("When considering a new trial motion under Rule 33 of the Federal Rules of Criminal Procedure, the Court sits as a proverbial thirteenth juror, and may consider the evidence in whatever light seems most persuasive to it— which may or may not be most favorable to the Government."). If the Court disagrees with the analysis set forth above for the Motion for Judgment of Acquittal, in the alternatively, this Court should vacate the judgment and grant a new trial, since the interest of justice so requires. Fed. R. Crim. P. 33(a).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant Mr. Scarpa's motion, set aside the

verdict, and enter a judgment acquitting him on all counts.


Dated: Mineola, New York
        June 3, 2019




                                              Respectfully submitted,


                                              RAISER & KENNIFF, P.C.

                                              _____/s/_____
                                              By: Bruce R. Connolly
                                              300 Old Country Road, Suite 351
                                              Mineola, NY  11501
                                              Tel: 516 742-7600
                                              Fax: 516 742-7618
                                              Email: connolly@raiserandkenniff.com

                                              *Attorneys for Defendant John Scarpa*